UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Food Market Merchandising, Inc.,

                Plaintiff,

v.

Scottsdale Indemnity Company,

                Defendant.

Civ. No. 15-2874 (RHK/FLN)
**MEMORANDUM OPINION
AND ORDER**

---

Alexander M. Jadin, Timothy D. Johnson, Roeder Smith Jadin, PLLC, Bloomington, Minnesota, for Plaintiff.

Tiffany M. Brown, Bradley M. Jones, Matthew P. Lawlyes, Meagher & Geer, PLLP, Minneapolis, Minnesota, for Defendant.

---

In this action, Plaintiff Food Market Merchandising, Inc. ("FMM") alleges that its insurer, Defendant Scottsdale Indemnity Company ("Scottsdale"), breached its insurance policy by (1) failing to defend it from a lawsuit brought by a former employee and (2) failing to indemnify it in the settlement of that lawsuit. Presently before the Court are the parties' Cross-Motions for Summary Judgment. For the reasons that follow, the Court will grant Scottsdale's Motion and deny FMM's Motion.

## BACKGROUND

FMM is a food marketing and distribution company. It purchased a Business and Management Indemnity Policy (the "Policy") from Scottsdale insuring FMM for the period November 2013 to November 2014, which was later extended to March 2015. (Jadin Decl. Ex. 1.) The Insuring Clause of the Policy provided:

>Insurer shall pay the Loss of the Insureds[1] which the Insureds have become legally obligated to pay by reason of an Employment Practices Claim first made against the Insureds during the Policy Period . . . and reported to the Insurer pursuant to Section E.1[] herein, for an Employment Practices Wrongful Act taking place prior to the end of the Policy Period.

(Id. at 11.)  Section E.1 of the Policy—the notice provision—provided:

>The Insureds shall, as a *condition precedent* to their rights to payment . . . give Insurer written notice of any Claim *as soon as practicable*, but in no event later than sixty days after the end of the Policy Period.

(Brown Decl. Ex. A (emphases added).)

At issue here is the Policy's application to a dispute between FMM and its former employee, Robert Spinner.  FMM hired Spinner in 1999 to sell its products in exchange for commissions on his sales.  (Id. Ex. B, ¶ 6.)  In 2009, Spinner began selling FMM's "milk straws"[2] to retailers.  (Id. ¶ 7.)  He sold roughly $16 million worth of milk straws by 2012.  (Id. ¶ 8.)  However, shortly thereafter, his employment relationship with FMM began to disintegrate.  According to Spinner, FMM promised to pay him a draw against his commissions throughout 2013.  (Id.)  But before Spinner's first 2013 paycheck, FMM advised that it would not pay him any 2013 commissions until the last payday of the year.  (Id.)  Then, in late December 2013, FMM outright refused to pay Spinner.  (Id. ¶ 12.)  FMM took the position that Spinner had "failed to fulfill his employment responsibilities" (id. Ex. 3, ¶ 10), although the reason for this assertion is unclear from the record.  Regardless, Spinner viewed FMM's non-payment as a constructive termination and halted his work.  (Id.)

---

[1] The term "Insureds" means the Company and its employees, officers, and directors.

[2] Milk straws are drinking straws designed to add flavor to milk as it moves through the straw.

On January 13, 2014, Spinner sued FMM in the Hennepin County District Court (the "Spinner Litigation") for breach of contract, unjust enrichment, and violation of various Minnesota labor laws. (See Jadin Decl. Ex. 2.) FMM obtained counsel and litigated the matter for several months. On June 27, 2014, Spinner prevailed on his motion for partial summary judgment and was awarded nearly $500,000 in damages.[3] In the shadow of this award, FMM then attempted to negotiate a settlement with Spinner. (See id. Exs. 4, 5.)

On August 22, 2014—almost two months after the adverse summary-judgment ruling and almost seven months after the Spinner Litigation began—FMM tendered the matter to Scottsdale for defense and indemnification. (Brown Decl. Ex. C, Interrog. 7.) Scottsdale responded on September 30, 2014, with a tentative denial of coverage, and it unequivocally denied coverage by letter dated June 17, 2015. (See Jadin Decl. Ex. 6.) The insurer took the positon that the Policy did not cover the Spinner Litigation, and, in any event, FMM's failure to provide timely notice precluded coverage. (Id.)

On June 10, 2015, FMM commenced this action in the Hennepin County District Court, alleging that Scottsdale had breached the Policy by denying coverage or, alternatively, breached the implied covenant of good faith and fair dealing. FMM also sought a declaration that the Policy covers the Spinner Litigation. Scottsdale timely removed the action to this Court, and, with discovery complete, both parties now move for summary judgment. The Motions have been fully briefed, and the Court heard argument on June 21, 2016; the Motions are now ripe for disposition.

---

[3] The state court did not enter judgment at that time, possibly because live claims remained.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering FMM's Motion, the Court views the record in the light most favorable to Scottsdale, and, when considering Scottsdale's Motion, the Court views the record in the light most favorable to FMM. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011).

## ANALYSIS

### I. Duty to defend/indemnify

In Minnesota[4], an insurer has both a duty to defend and a duty to indemnify its insured. Meadowbrook, Inc. v. Tower Ins. Co., Inc., 559 N.W.2d 411, 415 (Minn. 1997). The duty to defend is broader than the duty to indemnify. Id. An insurer must *defend* its insured against any cause of action *arguably* within the scope of the policy. Id. To determine whether this obligation has been triggered, a court compares the allegations in the underlying complaint with the relevant policy language. Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 390 (Minn. 1977). The insurer bears the burden of showing all claims are clearly outside the policy's coverage to avoid defending the insured. Id. By contrast, an insurer must *indemnify* its insured only "when it is established that the insured's liability . . . is within the scope of the insurance policy." Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co., 819 N.W.2d 602, 616 (Minn. 2012). "The insured bears the initial burden of proving prima facie coverage of a third-party claim under a liability insurance policy." Id. Again, the language of the particular insurance policy controls. Id.

### II. Notice

Here, Scottsdale argues that FMM was entitled to neither defense nor indemnification because FMM failed to timely notify it of the Spinner Litigation. As set

---

[4] Both parties rely on Minnesota law in their briefs, neither has asked the Court to apply the law of a different state, and the Policy does not contain a choice-of-law provision. Accordingly, the Court will apply Minnesota law. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003).

forth above, the Policy required FMM, "as a *condition precedent* to coverage," to notify Scottsdale it had been sued "as soon as practicable, but in no event later than sixty days after the end of the Policy Period." The Court finds this language unambiguous.[5] "As soon as practicable" means as soon as performable or feasible under the circumstances. Cargill, Inc. v. Evanston Ins. Co., 642 N.W.2d 80, 86 (Minn. Ct. App. 2002); Black's Law Dictionary (6th ed. 1990) (defining "practicable" to mean performable, feasible, or possible).

FMM contends that the phrase "as soon as practicable" is ambiguous, asserting that the Policy's end date for valid notice—sixty days after the end of the Policy Period—*defined* the phrase "as soon as practicable." In other words, FMM argues that the notice it provided was sufficient because it occurred before the end date. In the Court's view, this is an unreasonable interpretation of the Policy. First, FMM's reading is contrary to the grammatical structure of the notice provision. The end date is set apart from the phrase "as soon as practicable" by a comma and begins with the disjunctive, "*but* in no event [after the end date]" (emphasis added). This denotes two independent clauses, with the end date *modifying* the phrase "as soon as practicable," not *defining* it. Cf. Mumid v. Abraham Lincoln High Sch., Civ. No. 05-2176, 2008 WL 2811214, at *11 (D. Minn. July 16, 2008) (Schlitz, J.) ("[A] comma . . . is the conventional way of marking a [] clause as

---

[5] If policy language is unambiguous, its plain and ordinary meaning controls. Id. If policy language is ambiguous—subject to two or more reasonable interpretations—the Court construes it in favor of the insured. State Farm Ins. Co. v. Seefeld, 481 N.W.2d 62, 64 (Minn. 1992). Whether policy language is ambiguous is a question of law for the Court. Babinski v. Am. Family Ins. Grp., 569 F.3d 349, 351 (8th Cir. 2009) (citing Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 45 (Minn. 2008)).

nonrestrictive."), aff'd, 618 F.3d 789 (8th Cir. 2010). Second, FMM's construction of the Policy would render the phrase "as soon as practicable" meaningless; if notice were sufficient at any time prior to sixty days after the Policy lapsed, there would have been no reason to include the phrase "as soon as practicable." In essence, FMM asks the Court to strike "as soon as practicable" from the Policy, but the Court must interpret the Policy "in a way that gives all of its provisions meaning." Current Tech. Concepts, Inc. v. Irie Enters., Inc., 530 N.W.2d 539, 543 (Minn. 1995). Third, expressly defined terms abound throughout the Policy, carefully delineated with boldface and capital letters. (See Jadin Decl. Ex. 1.) If the Policy had intended to define "as soon as practicable," it would so appear, but it does not. The absence of boldface or capitalization belies the suggestion the phrase was defined to mean "within 60 days after the end date."

For all of these reasons, the Court concludes the notice provision is not susceptible to more than one reasonable interpretation. The question, then, is whether FMM complied with this unambiguous Policy requirement. In the Court's view, the answer is clearly, "No."

To be sure, whether a party provided notice as soon as practicable generally presents a question for the finder of fact. Cargill, 642 N.W.2d at 86. A fact issue may be present, for example, where an insured offers some plausible reason for its delay. See, e.g., Cargill, 642 N.W.2d at 87 ("[I]t would not be wholly unreasonable for a fact-finder to determine that . . . it was practical for Cargill to wait until the $1 million deductible was exceeded [to provide notice]."). But, where no reasonable factfinder could conclude

an insured had provided notice as soon as practicable, a Court may properly decide the issue at summary judgment. Id.

Here, Spinner sued FMM on January 13, 2014, and FMM did not tender the matter to Scottsdale until August 22, 2014—some seven months later. During that time, FMM hired counsel, litigated the case, and negotiated with Spinner, all without seeking Scottsdale's involvement. FMM has failed to explain its delay, averring only that it "did not deliberately refrain from making an insurance claim at an earlier date. It retained representation to defend it in the Spinner litigation, and in the course of that representation, [FMM]'s attorneys provided notice to Scottsdale." (Brown Decl. Ex. B, Interrog. 20.) Nowhere does it identify facts from which a reasonable factfinder could conclude it provided notice to Scottsdale "as soon as practicable."

FMM responds that, even if it failed to comply with the notice provision, Scottsdale may only deny it defense/indemnity if it shows it was prejudiced by FMM's delay. In support, it cites Reliance Insurance Co. v. St. Paul Insurance Cos., 239 N.W.2d 922, 925 (Minn. 1976). There, the Minnesota Supreme Court recognized a general rule, where an insurance policy requires an insured to provide notice, that an insurer may only deny coverage if it was prejudiced by the insured's delay. Scottsdale acknowledges this general rule but contends that prejudice is not required here because notice is a *condition precedent* to coverage under the Policy. (Def.'s Supp. Mem. 24 (citing Sterling State Bank v. Va. Sur. Co., 173 N.W.2d 342, 354–55 (Minn. 1969)).) In Sterling, the Minnesota Supreme Court held that, "where the giving of notice of loss . . . is a *condition precedent* of liability under the insurance contract, as it is in the case before [the Court],

the [general] rule [that prejudice must be shown] does not apply and noncompliance with that provision is fatal to recovery." Id. (emphasis added).

As already noted, the Insuring Clause here provided that the "Insurer shall pay the Loss of the Insureds . . . reported to the Insurer pursuant to [the notice provision] herein." The notice provision, in turn, provided that "the Insureds shall, *as a condition precedent* . . . give to Insurer written notice as soon as practicable, but in no event later than sixty days after the end of the Policy Period." (emphasis added). This language demonstrates that notice "as soon as practicable" was a condition precedent to payment under the Policy, and Scottsdale need not show prejudice in order to have properly denied coverage.

FMM also argues that even if it failed to comply with the notice provision, its failure was not material because it does not go to "the root or essence of the contract," and Scottsdale suffered no detriment as a result. (Pl.'s Opp'n Mem. 12-13 (citing BOB Acres, LLC v. Schumacher Farms, LLC, 797 N.W.2d 723, 728 (Minn. Ct. App. 2011)).) But Sterling forecloses this argument. As noted above, where, as here, timely notice is a condition precedent to recovery under an insurance policy, failure to comply with that provision bars recovery, notwithstanding a lack of prejudice to the other party. Sterling, 173 N.W.2d at 354–55. Thus, FMM's argument is unavailing.

FMM finally argues that Scottsdale waived its right to notice as soon as practicable and should be estopped from asserting untimely notice as a defense. Waiver occurs where a party to a contract ignores a provision therein or continues to exercise rights or demand performance even though it knows a condition precedent has not been

- 9 -

met. Appollo v. Reynolds, 364 N.W.2d 422, 424 (Minn. Ct. App. 1985). Estoppel occurs when one party to a contract reasonably relies upon representations made by the other party to its detriment. Lundberg v. Nw. Nat'l Bank of Minneapolis, 216 N.W.2d 121, 124 (Minn. 1974). In the Court's view, neither doctrine is implicated here.

FMM points to Scottsdale's "delay" in determining whether the Policy covered the Spinner Litigation. But it cites no authority—and the Court knows of none—requiring an insurer to make a snap judgment regarding coverage, lest it waive its rights or be estopped from asserting them. Moreover, FMM does not direct the Court's attention to any cases indicating that delay alone constitutes waiver, nor does it point to any exercise of rights, or continued demand of performance, by Scottsdale after it became aware of the untimely notice that would imply a waiver of its right to such notice. Indeed, waiver arises only when a party deliberately ignores its rights under a contract, see Appollo, 364 N.W.2d at 424, but here the exact opposite occurred, as it is undisputed Scottsdale expressly relied upon the notice provision when denying coverage. As for estoppel, FMM's argument is based on conduct that occurred *after* FMM had already provided untimely notice. But FMM cites nothing in the record to support its bald assertion that "Scottsdale represented [to it] that coverage was available for the Spinner Litigation, which induced [it] to make certain strategic decisions in the Spinner Litigation." (Pl.'s Opp'n Mem. 16.) To the contrary, Scottsdale's denial letter explicitly cited untimely notice as one of the reasons Scottsdale had denied coverage. (Jadin Decl. Ex. 6.) For these reasons, FMM's waiver and estoppel arguments are meritless.

In sum, there is no genuine issue that FMM failed to notify Scottsdale of the Spinner Litigation as soon as practicable. Because timely notice is a condition precedent to payment under the Policy, Scottsdale's duty to defend/indemnify was never triggered, and Scottsdale is entitled to judgment as a matter of law.

**III.    Good faith and fair dealing**

FMM also alleged that Scottsdale breached the covenant of good faith and fair dealing by denying coverage of the Spinner Litigation. In Minnesota, "every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995). A claim for breach of this covenant is grounded in contract, "such that an insured may assert a breach of the covenant of good faith and fair dealing in conjunction with a breach of contract claim." Miller v. ACE USA, 261 F. Supp. 2d 1130, 1140 (D. Minn. 2003) (Montgomery, J.). However, where the claim is based on the same facts as a non-viable breach-of-contract claim, summary judgment is appropriate. Bethel v. Darwin Select Ins. Co., 735 F.3d 1035, 1042 (8th Cir. 2013). That is the case here; FMM's claim for breach of the duty of good faith and fair dealing is based on the same facts as its breach-of-contract claim—Scottsdale's failure to defend and indemnify it. (Brown Decl. Ex. C, Interrog. 10.) As discussed above, Scottsdale's duties to defend and indemnify FMM were never triggered. Hence, Scottsdale is entitled to judgment as a matter of law on FMM's claim for breach of the duty of good faith and fair dealing.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that (1) FMM's Motion for Partial Summary Judgment[6] (Doc. No. 22) is **DENIED**; (2) Scottsdale's Motion for Summary Judgment (Doc. No. 27) is **GRANTED**; and (3) FMM's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 22, 2016

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[6] FMM moved for summary judgment only as to liability, not damages.